*CMR*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      )
                               )
                               )
                 v.            )        **CRIMINAL ACTION**
                               )        NO. 07-cr-0258-05
                        **FILED**
GREGORY JONES,                 JUN 26 2009
        a/k/a "G,"
                               MICHAEL E. KUNZ, Clerk
                 **Defendant.**   By_____Dep. Clerk

---

### MEMORANDUM OPINION & ORDER

RUFE, J.                                         June 26, 2009

     The Third Superseding Indictment in this matter charges Defendant Gregory Jones with

one count of conspiracy to distribute five kilograms or more of cocaine (Count One), and one

count of attempted possession with intent to distribute five kilograms or more of cocaine, and

aiding and abetting the same (Count Two). The Government filed Motions in *Limine* to admit

physical evidence confiscated from a Mullica Hill, New Jersey residence on or about August 27,

2008,[1] as well as Defendant's post-arrest statement of unemployment.[2] Before resolving this

Motion, the Court will briefly summarize the relevant procedural and factual background of this

case.

## I.      BACKGROUND

     An arrest warrant was issued for Defendant Jones on August 20, 2008 pursuant to the

---

[1] Gov't's First Mot. *in Limine* to Admit Evid. Recovered from Def.'s Arrest [Document No. 212] ("Gov't Mot.").

[2] Gov't's Second Mot. *in Limine* to Admit Def.'s Post-Arrest Statement of Unemployment [Document No. 213] ("Gov't Second Mot.").

Second Superseding Indictment.[3]  On or about August 27, 2008, Defendant Jones was located at

a residence in Mullica Hill, New Jersey by Drug Enforcement Agency ("DEA") agents.  After

entering the Mullica Hill residence, the agents encountered Defendant Jones exiting the master

bedroom and then took him into custody.  Immediately after he was taken into custody, one of

the DEA agents escorted Defendant Jones back into the master bedroom, and observed in plain

view a large book entitled <u>Busted by the Feds: A Manual for Defendants Facing Federal

Prosecution</u>, piles of cash and numerous cell phones surrounding the bed.  The agent also saw a

pair of cargo shorts on the bed with a large amount of cash sticking out of the cargo pocket.  It

was later determined that there was approximately $14,400.00 in plain view around the bed of

the master bedroom.  At one point during his arrest, Defendant Jones was asked by a DEA agent

if he needed to contact an employer to let him know that he would not be coming to work.

Defendant Jones replied that he did not have a job.

   Some time later, Defendant Jones consented to the DEA agents searching the Mullica Hill

residence.  The search revealed a staircase in the closet of the master bedroom leading to an attic-

like space in which the agents found a suitcase and a bag containing approximately $71,000.00 in

cash.  Under the suitcase and bag were three greeting cards of a personal nature in envelopes

addressed to "Greg."  Agents also found approximately $45,000.00 in jewelry, including Rolex

and Breitling watches and a diamond necklace, as well as about fifteen cellular telephones.  In

addition, business cards for South Street Mailbox Plus, two Enterprise locations, and the Alamo

branch at the Philadelphia International Airport were found in Defendant Jones's wallet.

---

[3] The factual background of this case is derived from the Findings of Fact in the Court's Memorandum
Opinion denying Defendant Jones's Motion to Suppress.  (<u>See</u> Mot. to Suppress Evid. Findings of Fact and
Conclusions of Law, June 12, 2009 [Document No. 275].)

The Government filed Motions *in Limine* to admit physical evidence confiscated from Defendant Jones's Mullica Hill, New Jersey residence on or about August 27, 2008, including about $85,400.00 in United States currency;[4] an estimated $45,000.00 in jewelry, including Rolex and Breitling watches and a diamond necklace; approximately fifteen cell phones; a business card for South Street Mailbox Plus; the book entitled <u>Busted by the Feds: A Manual for Defendants Facing Federal Prosecution</u>; as well as Defendant Jones's post-arrest statement of unemployment.  On February 26, 2009, the Court held its first hearing on these Motions, after which the Court granted the Government's First Motion *in Limine* as unopposed, although it denied the Government's Motion without prejudice as to the book <u>Busted by the Feds: A Manual for Defendants Facing Federal Prosecution</u>.[5]  The Court also granted Defendant Jones leave to respond to the Government's Second Motion *in Limine*.[6]

After retaining new counsel, Defendant Jones filed a response to the Government's Second Motion *in Limine*, but also asked the Court to allow Defendant Jones to respond to the Government's First Motion *in Limine* and to reconsider its ruling on the same.[7]  The Government then filed a supplemental brief in support of its First Motion *in Limine* immediately prior to the

---

[4] Although the Government's First Motion *in Limine* seeks to admit $86,289.00 in cash, testimony at the June 10, 2009 hearing discussed only $85,400.00 in cash.  This discrepancy was not explained and therefore, the Court will only consider and admit the amount of cash that was testified to at the hearing.

[5] Order, February 26, 2009 [Document No. 239].

[6] <u>See</u> Document No. 246.

[7] Mot. and Mem. of Law in Support of Def., Gregory Jones, Pre-Trial Mots. Pursuant to Fed. R. Crim. P. 12 and Resps. to the Gov't's Mots. *in Limine* 1 Through 4 Inclusive [Document No. 261] ("Def.'s Resp.").  In his response, Defendant Jones also moved to suppress the evidence at issue in the Government's First and Second Motions *in Limine*.  That Motion, however, was denied at the June 10, 2009 hearing and a written memorandum opinion in support of that ruling was filed by the Court on June 12, 2009.  (<u>See</u> Mot. to Suppress Evid. Findings of Fact and Conclusions of Law, June 12, 2009 [Document No. 275]; <u>see also</u> Order, June 12, 2009 [Document No. 276].)

second hearing on these Motions,[8] seeking to admit the following items in addition to those previously specified: business cards for two Enterprise locations and the Alamo branch at the Philadelphia International Airport;[9] in addition to three greeting cards in envelopes addressed to "Greg."[10] At the June 10, 2009 hearing and without opposition from the Government, the Court agreed to re-visit the Government's First Motion *in Limine* upon which it had already ruled. Thus, the Government's First and Second Motions *in Limine* are now ripe for disposition.

## II. DISCUSSION

Defendant Jones argues that the evidence at issue in the Government's First and Second Motions *in Limine* is inadmissible for three reasons: (1) it is propensity evidence prohibited by Federal Rule of Evidence 404(b); (2) it is not relevant under Federal Rule of Evidence 401; and (3) the prejudice of such evidence outweighs its probative value under Federal Rule of Evidence 403. The Court will consider each of these arguments in turn.

### A. An Analysis Under Rule 404(b) is Not Required

The Court must first decide if a Rule 404(b) analysis is necessary to admit this evidence.[11]

---

[8] Gov't's Supplemental Br. Regarding Its First Mot. *in Limine* to Admit Evid. Recovered from Def.'s Arrest [Document No. 266] ("Gov't Br.").

[9] The Government submitted an exhibit with copies of these business cards. (See Gov't Ex. 31.) The copy included a business card for an online traveling agency that was not mentioned in any of the Government's Motions or at the June 10, 2009 hearing. Therefore, the Court will assume that the Government is not moving to admit this business card.

[10] The Government seeks to admit "envelopes and other miscellaneous documents in the Defendant Gregory Jones's name [to] show his possession and use of the home in Mullica Hill, New Jersey at the time of his arrest." (Gov't Br. at *1.) The only documents in Defendant Jones's name discussed at the June 10, 2009 hearing were the three greeting cards of a personal nature in envelopes addressed to "Greg." Thus, the Court will limit its inquiry of the admissibility of "the envelopes and other miscellaneous documents in the Defendant Gregory Jones's name" to the three greeting cards and the envelopes that contained them.

[11] Rule 404(b) provides as follows:

**Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not

4

Rule 404(b) "proscribes the admission of evidence of other crimes when offered to prove bad character."[12] The rule is not invoked, however, by evidence "offered as direct proof of the crime charged."[13] Rule 404(b) applies only to evidence that proves "other acts," not to evidence that is "circumstantial proof of the very conspiracy with which [a defendant is] charged."[14]

Here, the Government proffers each item of evidence listed in its First and Second Motions *in Limine* not as proof of other illegal acts, but rather to prove the conduct actually charged. The Government seeks to admit evidence of approximately $85,400.00 in cash and an estimated $45,000.00 in jewelry as "evidence of the proceeds of the charged drug trafficking conspiracy."[15] The post-arrest statement is being offered to "show the defendant's inability to explain the large amount of cash recovered by agents at the defendant's home and to thus link the defendant to the charged drug conspiracy."[16] The greeting cards and their envelopes are proffered to establish Defendant Jones's "possession and use of the home in Mullica Hill, New

---

admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b).

[12] United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999).

[13] United States v. Stewart, 325 F. Supp. 2d 474, 493 (D. Del. 2004) (citing United States v. Givan, 320 F.3d 452, 463 (3d Cir. 2003)).

[14] United States v. Betts, 16 F.3d 748, 757 (7th Cir. 1994).

[15] Gov't Mot. at 2.

[16] Gov't Second Mot. at 5.

Jersey" and that the cash found in the attic-like space belonged to Defendant Jones.[17]

Moreover, the Government moves to admit the cell phones as "evidence of the defendant's participation in the charged drug conspiracy."[18] The book is offered as "direct evidence of the charged drug trafficking conspiracy and the defendant's consciousness of guilt."[19] Finally, the business cards are for three car rental locations and one commercial shipping depot. The conduct charged in this matter involved drugs shipped to commercial shipping depots, specifically United Parcel Service ("UPS") stores at 211 South Street and 1735 Market Street, and then retrieved using rental cars.[20] Notably, one of the business cards is from the same rental car location allegedly used by co-defendant Lloyd Washington, Jr. when he rented cars for the purpose of retrieving drugs during the charged conspiracy.[21] Hence, the business cards are circumstantial evidence from which a jury could find that Defendant Jones participated in the charged conspiracy. Thus, each item of evidence which the Government moves to admit in its First and Second Motions *in Limine* is offered to prove the conduct charged, and a Rule 404(b) analysis is not necessary to determine their admissibility.

Defendant Jones argues that the evidence offered by the Government is inadmissible because it "only establishes Jones's propensity to engage in narcotics sales rather than for any legitimate purpose as defined by Fed. R. Evid. 404(b)."[22] This argument, however, is premised

---

[17] Gov't Br. at *1-*2.

[18] Gov't Mot. at 3.

[19] Id.

[20] Id. at 4.

[21] Gov't Br. at *1.

[22] Def.'s Resp. at 4.

on the assumption that an analysis under 404(b) is warranted, which as explained *supra* is false. Even in <u>United States v. Betts</u>, the case upon which Defendant Jones primarily relies, the court still noted that circumstantial evidence of the charged conspiracy was not actually admitted under Rule 404(b) because it was not evidence of "other acts."[23]  Hence, Defendant Jones's argument is unpersuasive and the Court will not exclude the evidence at issue here under Rule 404(b).[24]

### B.      Admissibility of Evidence Proffered

As an analysis under Rule 404(b) is not required, the evidence at issue in the Government's First and Second Motions *in Limine* will be admitted if it is relevant as defined by Rule 401, and if its probative value is not substantially outweighed by its prejudicial effect in accordance with Rule 403.  As a general rule, relevant evidence is admissible.[25]  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[26]  Yet, this is a very low threshold of admissibility.[27]  Even if evidence is relevant, it may still be excluded under Rule 403 "if its probative value is substantially outweighed by the

---

[23] 16 F.3d at 757.

[24] The Court also notes that the other cases relied upon by Defendant Jones each involved the application of Rule 404(b) to evidence of other crimes.  <u>See</u> <u>United States v. Lazcano-Villalobos</u>, 175 F.3d 838, 845 (10th Cir. 1999) (evidence of defendant's prior arrest for possession with intent to distribute marijuana); <u>United States v. McCarthur</u>, 6 F.3d 1270 (7th Cir. 1993) (testimony recounting defendant's statement that she had previously been arrested for possession of cocaine); <u>United States v. Echeverri</u>, 854 F.2d 683, 644 (3d Cir. 1988) (testimony relating to uncharged drug crimes); <u>United States v. Boyd</u>, 595 F.2d 120, 126 (3d Cir. 1978) (testimony that defendants discussed purchasing necessary precursor to manufacture drugs).  Hence, those cases are inapposite and do not control here.

[25] Fed. R. Evid. 402.

[26] Fed. R. Evid. 401.

[27] <u>Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.</u>, 797 F.2d 1222, 1244 (3d Cir. 1986).

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[28]

> 1.   Defendant Jones's Unexplained Wealth

Among the evidence the Government now seeks to admit is approximately $85,400.00 in cash and an estimated $45,000.00 in jewelry, including Rolex and Breitling watches and a diamond necklace. "It is the general view that where a defendant is on trial for a crime in which pecuniary gain is the usual motive, evidence of the sudden acquisition of wealth by the defendant is admissible."[29] This is true, even if the source of such wealth cannot be directly connected to the charged conduct.[30] Yet, a nexus must be present, to avoid the presentation of evidence "merely to give color to the present charges, and to cause the jury to believe that the accused had in his possession more money than a man in his condition could have obtained by honest methods, and therefore he must be guilty."[31] The Third Circuit has found a sufficient nexus if the "sudden unexplained acquisition of wealth [occurs] at or about the time of the offense charged."[32]

Thus, the Court must determine if the unexplained wealth possessed by Defendant Jones was discovered close enough in time to the charged conduct to constitute the "fruits" of the charged offenses. In United States v. Newton, the defendants were charged with a conspiracy

---

[28] FED. R. EVID. 403.

[29] United States v. Jackskion, 102 F.2d 683, 684 (2d Cir. 1939); see also United States v. Chaney, 446 F.2d 571, 575 (3d Cir. 1971) (citing United States v. Howell, 240 F.2d 149, 158 (3d Cir. 1956); United States v. McKenzie, 414 F.2d 808, 809 (3d Cir. 1969)).

[30] United States v. Jackson-Randolph, 282 F.3d 369, 379 (6th Cir. 2002); United States v. Newton, 891 F.2d 944 (1st Cir. 1989) (quoting United States v. Ariza-Ibarra, 605 F.2d 1216, 1225 n.11 (1st Cir. 1979)); Jackskion, 102 F.2d at 684; see also United States v. Cooley, 131 Fed. Appx. 881, 883 (3d Cir. 2005).

[31] United States v. Williams, 168 U.S. 382, 396 (1897).

[32] United States v. Kenny, 462 F.2d 1205, 1219 (3d Cir. 1972).

involving the sale and importation of marijuana, the proceeds of which were estimated by the Government to be twenty to twenty-four million dollars.[33]  During the trial, the government introduced evidence of large purchases by the defendants immediately following the alleged conspiracy and continuing for the next five years.[34]  Defendants argued on appeal that "the time between the importation and the purchases was too long to show relevance absent evidence to connect the money and the crime."[35]  The <u>Newton</u> court did not agree "given the large amount of profit derived from this importation, that five years after a crime is too long to destroy the relevance, as a matter of law, of the possession and use of large amounts of unexplained money." The court found that the trial court did not err in admitting evidence of the defendants' large purchases even five years after the end of the charged conspiracy.[36]

Similarly, in this matter, Defendant Jones is alleged to be the leader of a conspiracy that "brought over 150 kilograms of cocaine to Philadelphia over a nine (9) month period."[37]  It is undisputed that approximately eighteen months after the end of the alleged conspiracy, agents discovered Defendant Jones in possession of unexplained wealth in the form of about $85,400.00 in cash and approximately $45,000.00 in jewelry.  Given the amount of drugs allegedly involved in the charged conspiracy,[38] the Court cannot hold that as a matter of law that Defendant Jones's

---

[33] 891 F.2d at 946.

[34] <u>Id.</u> at 948.

[35] <u>Id.</u>

[36] <u>Id.</u>

[37] Gov't Mot. at 3.

[38] It should be noted that in a prior hearing, the Court heard testimony from Detective King, whom it found credible, that the street value of one kilogram of cocaine is twenty-five to thirty thousand dollars. (Tr. of Mots. Hr'g, September 4, 2008 [Document No. 171] at 36:24-37:5; <u>see also</u> Motion to Suppress Evidence Findings of Fact and

possession of wealth was remote enough in time to destroy the nexus between it and the charged

conspiracy. So long as the Government lays the proper foundation and establishes at trial the

large amount of drugs it alleges to be involved in the charged conspiracy, then the cash and

jewelry confiscated from Defendant Jones's Mullica Hill residence may be admitted as fruits of

the charged crimes.[39]

As the cash and jewelry will be admitted, so too will the greeting cards and their

envelopes, as well as Defendant Jones's post-arrest statement. The greeting cards were of a

personal nature and found in envelopes addressed to "Greg." Moreover, they were found

secreted in the attic-like space, beneath the suitcase and bag containing a large amount of cash.

Therefore, they are relevant to show Defendant Jones's proprietary interest in the cash. With

respect to Defendant Jones's post-arrest statement, this evidence is relevant to demonstrate

Defendant Jones's inability to explain the large amounts of cash and expensive jewelry recovered

by agents from his home. The Court can determine no undue prejudice from the admission of

this evidence that cannot be cured by a limiting instruction, and thus will admit the same.

2.      Cell Phones

The Government seeks to admit evidence of the approximately fifteen cell phones

confiscated as "evidence of the defendant's participation in the charged drug conspiracy."[40] Cell

---

Conclusions of Law, November 21, 2008 [Document No. 201] at 10.) Thus, 150 kilograms of cocaine would have a street value between $3,750,000.00 and $4,500,000.00.

[39] The Court notes that other circuit courts have held that whether large amounts of cash are from illegal activity other than that which is charged goes to weight and not the admissibility of the evidence. See Martinez, 938 F.2d at 1085; Newton, 891 F.2d at 949 (quoting United States v. Tramunti, 513 F.2d 1087, 1105 (2d Cir. 1975)).

[40] Gov't Mot. at 3.

phones are considered "essential tools of . . . drug trade."[41]  Here, the Government seeks to prove

that Defendant Jones participated in a drug conspiracy because approximately eighteen months

after the conspiracy ended, he was found in possession of fifteen cell phones.  Moreover, the

Government makes no offer of proof tying any of these cell phones to the charged conspiracy, or

even to Defendant Jones beyond the fact that they were in his possession.  Where, as here, tools

of the trade are discovered in the possession of a defendant well beyond the time period of the

charged conspiracy, an additional connection must be shown in order for the evidence to be

admissible to prove participation in the charged conduct.[42]  Otherwise, the probative value of

such evidence is severely undermined, and the prejudicial effect is increased as it encourages a

jury to find a defendant guilty on an improper basis — that he has all the "trappings" of a drug

dealer.  Hence, unless the Government can establish a further connection between the cell phones

confiscated and the conduct charged, the Court will not admit the cell phones as evidence in this

case.

      3.    <u>Business Cards</u>

      The business cards, as discussed earlier, are for three car rental locations and one

commercial shipping depot.  The conduct charged in this matter involved shipped drugs to

commercial shipping depots and retrieving it using rental cars.  Thus, that Defendant Jones had

these business cards is certainly relevant as it makes his involvement in the charged conspiracy

more likely.  Furthermore, the Court can discern no unfair prejudice from the admission of this

---

    [41] <u>United States v. Portalla</u>, 496 F.3d 23, 27 (1st Cir. 2007); <u>Lazcanos-Villalobos</u>, 175 F.3d at 844; <u>see also</u>
<u>United States v. Rodriguez-Ortiz</u>, 455 F.3d 18, 22 (1st Cir. 2006); <u>United States v. Love</u>, 336 F.3d 643, 645 (7th Cir.
2003); <u>United States v. Munera-Uribe</u>, 192 F.3d 126 (5th Cir. 1999).

    [42] <u>United States v. Zarintash</u>, 736 F.2d 66, 71-72 (3d Cir. 1984).

evidence.  Defendant Jones argues that the Government "cannot connect the South Street

Mailbox Plus store to the charged conspiracy," nor can it prove that Defendant Jones "either

retrieved packages or established fictitious business accounts at any of the shipping locations."[43]

Such an argument is without merit, as the Government seeks to admit these items as evidence

that Defendant Jones played a leadership role in a conspiracy whose *modus operandi* involved

commercial shipping depots and rental cars.[44]  Thus, the Court will admit the business cards

found in Defendant Jones's wallet.

        4.     Book

The Government correctly asserts that the book Busted by the Feds: A Manual for

Defendants Facing Federal Prosecution is relevant as evidence of Defendant Jones's

consciousness of guilt.[45]  Nevertheless, the Court finds that while the probative value of this book

is limited, it is unduly prejudicial and would encourage a finding of guilt on improper grounds.

Thus, the Court will exclude the book under Rule 403.

**III.**    **CONCLUSION**

In resolving the Government's First and Second Motions *in Limine*, a Rule 404(b)

analysis is not necessary to determine the admissibility of the evidence at issue.  Of the physical

evidence confiscated from Defendant Jones's Mullica Hill, New Jersey residence on or about

August 27, 2008, the following evidence will be admitted as relevant and because its probative

value is not substantially outweighed by its prejudicial effect: $85,400.00 in United States

---

[43] Def.'s Resp. at 7.

[44] Gov't Mot. at 2, 4; Gov't Br. at *1.

[45] Gov't Mot. at 3.

currency; an estimated $45,000.00 in jewelry, including Rolex and Breitling watches and a

diamond necklace; business cards for South Street Mailbox Plus, two Enterprise locations and

the Alamo branch at the Philadelphia International Airport; and three greeting cards and their

envelopes addressed to "Greg."  The Court will also admit Defendant Jones's post-arrest

statement of unemployment.  The Court will exclude the book entitled <u>Busted by the Feds: A</u>

<u>Manual for Defendants Facing Federal Prosecution</u> and the fifteen cell phones under Rule 403,

because even though this evidence is relevant, its prejudicial effect substantially outweighs its

probative value.

      An appropriate Order follows.